UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **3901 RIDGELAKE DRIVE, L.L.C.** | **CIVIL ACTION** |
| **VERSUS** | **No. 09-147** |
| **FIDELITY & DEPOSIT COMPANY OF MARYLAND** | **SECTION: I/4** |

## ORDER AND REASONS

Before the Court is Fidelity & Deposit Company of Maryland's ("Fidelity") motion to stay the above-captioned matter pending resolution of arbitrable issues underlying plaintiff's claims in this action. For the following reasons, Fidelity's motion is **GRANTED.**

## BACKGROUND

This lawsuit arises out of disputes related to the performance of a construction contract executed between plaintiff, 3901 Ridgelake Drive, L.L.C. ("Ridgelake"), and general contractor, Construction South, Inc. ("CSI").[1] On March 24, 2004, Ridgelake, as property owner, contracted with CSI to build a condominium complex.[2] Fidelity, acting as a surety, issued performance and payment bonds guaranteeing Ridgelake's obligations as required by the construction contract.[3] The bonds incorporate the construction

---

[1] Rec. Doc. No. 8, paras. 6, 9, 10, 11.

[2] *Id.* at para. 5,6; Rec. Doc. No. 9-3.

[3] *Id.* at paras. 7,8; Rec. Doc. No. 9-2, p. 2; Rec. Doc. No. 9-4.

1

contract by reference and name Ridgelake as obligee and CSI as principal.[4]

In December, 2007, CSI filed a demand for arbitration against Ridgelake for failing to pay the balance owed upon CSI's completion of the condominium construction.[5] Ridgelake filed a counter-demand against CSI for failing to complete the project, failing to build the project in a workmanlike manner, failing to fulfill all punchlist work, and failing to pay subcontractors.[6]

Ridgelake filed the instant lawsuit against Fidelity in January, 2009, alleging that Ridgelake made demands under the performance bond for Fidelity to arrange for the completion of the project and to pay for lien bonds secured as a result of CSI's failure to pay subcontractors.[7] Ridgelake claims that Fidelity breached its obligations under the performance and payment bonds.[8]

Fidelity filed this motion to stay the case pending the resolution of the claims in arbitration,[9] arguing that Fidelity's liability is contingent upon a finding that CSI is liable. In

---

[4]Rec. Doc. No. 9-4, pp. 1,5. The bonds each describe the March 24, 2004 construction contract and state "which contract is by reference made a part hereof...." *Id.*

[5]Rec. Doc. No. 9-5.

[6]Rec. Doc. No. 9-6, p. 1.

[7]Rec. Doc. No. 1, paras. 14, 15.

[8]*Id.* at paras 18-21.

[9]Arbitration is scheduled to commence on July 7, 2009.

response, Ridgelake argues that the Court should either order Fidelity to participate in the arbitration or declare that Fidelity shall be bound by the outcome of the arbitration.

## LAW AND ANALYSIS

### I. STANDARD OF LAW

The Federal Arbitration Act ("the FAA") mandates the United States District Courts to stay litigation in any case raising a dispute referable to arbitration. 9 U.S.C. § 3(2009). The FAA provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on the application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement....

*Id.*

Even if a party to litigation is not a signatory to an arbitration agreement, the party may be entitled to a stay as long as the litigation involves "'any issue referable to arbitration.'" *Waste Management, Inc. v. Residuos Industriales Multiquim, S.A.*, 372 F.3d 339, 342 (5th Cir. 2004)(quoting 9 U.S.C. § 3). The United States Court of Appeals for the Fifth Circuit has identified three factors[10] that demonstrate when claims against a non-signatory

---

[10]The factors are neither required nor exhaustive. *See id.*

3

constitute issues referable to arbitration and, therefore, invoke the FAA's mandatory stay provision, including: "1) the arbitrated and litigated disputes must involve the same operative facts; 2) the claims asserted in the arbitration and litigation must be 'inherently inseparable'; and 3) the litigation must have a 'critical impact' on the arbitration." *Id.; see also Harvey v. Joyce*, 199 F.3d 790, 795 (5th Cir. 2000)(concluding that the district court must stay claims asserted against a non-signatory to an arbitration agreement where the non-signatory's potential liability derives from the liability of a signatory, the claims against the non-signatory are based on and are inherently inseparable from the claims against a signatory, and the lawsuit against the non-signatory could have a critical impact on the arbitration).

It is clear from Ridgelake's amended complaint that this lawsuit involves the same operative facts as those involved in Ridgelake's arbitration. The complaint alleges that Fidelity is liable for its failure to ensure that CSI's construction project was completed in accordance with the plans and specifications and for its failure to pay for lien bonds issued as a result of CSI's failure to pay its subcontractors.

Furthermore, because Fidelity's alleged liability as a surety derives from CSI's alleged failure to fulfill its obligations as principal, Fidelity's potential liability is contingent upon the

4

outcome of the arbitration between Ridgelake and CSI. *See* La. Civ. Code art. 3035 ("Suretyship is an accessory contract by which a person binds himself to a creditor to fulfill the obligation of another upon the failure of the latter to do so."); *see also Fairfield Dev. Co. v. Jackson*, 438 So. 2d 664, 667 (La. Ct. App. 2d Cir. 1983)("[T]he extinction of the principal obligation simultaneously extinguishes the accessory or security obligation.") The claims against Fidelity as surety are, therefore, "inherently inseparable" from the claims against CSI as principal.[11]

Finally, the Court notes that permitting this litigation to proceed with respect to the performance and payment bonds before the completion of the arbitration concerning CSI's performance of the contract could hinder the agreed-upon arbitration between CSI and Ridgelake.[12] *See J.S.& H. Constr. Co. v. Richmond County Hosp.*

---

[11]The Court notes that the performance bond provides that, "if Contractor shall promptly and faithfully perform said Contract, then this obligation shall be null and void." Rec. Doc. No. 9-4, p. 6. The payment bond likewise provides that, "if Principal shall promptly make payment to all claimants...for all labor and material used or reasonably required for use in the performance of the Contract, then this obligation shall be void." Rec. Doc. No. 9-4, p. 2.

[12]The construction contract provides in pertinent part:
> Claims, disputes and other matters in question arising out of or relating to the Contract that are not resolved by mediation, except matters relating to aesthetic effect and except those waived as provided [in the Contract] shall be decided by arbitration which, unless the parties mutually agree otherwise, shall be in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association currently in effect. The demand for arbitration shall be filed in writing with the other party to this Agreement and with the American Arbitration Association and shall be made within a reasonable time after the dispute has arisen. Rec. Doc. No. 18-2, p. 11.

5

*Auth.*, 473 F.2d 212, 217 (5th Cir. 1973)("Any obligation under the bond must derive from a contractual obligation, and an action on the bond cannot precede a determination of the contract debt. The opposite conclusion would be inconsistent with the terms of the bond and would completely circumvent and render meaningless the arbitration provision....").

The Court recognizes that, although Fidelity is not a signatory to the arbitration agreement, Fidelity's bonds did incorporate the construction contract by reference and that such incorporation makes the arbitration provision binding upon Fidelity. *See Jewish Fed'n. of Greater New Orleans v. Fid. & Deposit Co. of Md*, No. 01-30371, 2001 WL 1085096, at *1 (5th Cir. Aug. 29, 2001)(citing *J.S.& H. Constr. Co.*, 473 F.2d at 216); *see also U.S. Fid. & Guar. Co. v. West Point Constr. Co.*, 837 F.2d 1507, 1508 (11th Cir. 1988); *Rashid v. U.S. Fid. & Guar. Co.*, No. 91-0141, 1992 WL 565341, at *7, 10 (S.D.W.Va. Sept. 28, 1992)("Federal courts have also consistently held that sureties on performance bonds are bound by arbitration clauses when the bond incorporates by reference another contract containing arbitration provisions."). Therefore, Fidelity will be bound by the arbitrator's determination with respect to the construction disputes between CSI and Ridgelake. *See id.; Rashid v. U.S. Fid. & Guar. Co.*, No. 91-0141, 1992 WL 565341, at *7, 10 (S.D.W. Va. Sept.

6

28, 1992).[13]

Notwithstanding, Fidelity will not be ordered to participate in the upcoming arbitration as there is no motion to compel before the Court nor any written demand upon Fidelity to arbitrate. Moreover, Fidelity is likely to be prejudiced by an order compelling it to arbitrate its defenses given that the arbitration is scheduled to commence in less than two months.

Accordingly,

**IT IS ORDERED** that Fidelity's motion to stay is **GRANTED** and that the above-captioned case is **STAYED** and **ADMINISTRATIVELY CLOSED** pending the resolution of the arbitration proceedings.

**IT IS FURTHER ORDERED** that the case may be reopened by written motion filed within thirty days of the completion of the arbitration proceedings.

**IT IS FURTHER ORDERED** that Fidelity shall be precluded from re-litigating the construction disputes between CSI and Ridgelake that are resolved by arbitration.

New Orleans, Louisiana, May 15th, 2009.

_____
**LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE**

---

[13] Fidelity concedes in its reply memorandum that it will be precluded from re-litigating the construction disputes between CSI and Ridgelake. Rec. Doc. No. 17, p. 3. Counsel for both parties further confirmed this stipulation in a telephone conference initiated by the Court.

7